Daniel PITCHER, Petitioner–Appellant,

v.

Stephen HUFFMAN, Warden, Respondent–Appellee.

No. 01–3268.

United States Court of Appeals, Sixth Circuit.

May 29, 2003.

Before NORRIS and BATCHELDER, Circuit Judges; and BARZILAY, Judge.*

## OPINION

ALAN E. NORRIS, Circuit Judge.

Daniel Pitcher appeals from the denial of a petition for a writ of habeas corpus, 28 U.S.C. § 2254. In 1995, an Ohio jury found petitioner guilty of aggravated murder, murder, kidnaping, aggravated robbery, and rape. These charges stemmed from the death of Sister Joann Marie Mascha, a member of the Ursuline Order. Although he faced the death penalty, the jury declined to impose it. Instead the trial court sentenced petitioner to a term of imprisonment of between fifty years and life.

Trial counsel for petitioner did not file a notice of appeal. After securing new counsel, petitioner filed a motion for leave to file a delayed appeal on February 19, 1997. This motion and a motion for reconsideration were summarily denied by the Ohio court of appeals. The Ohio Supreme Court declined to accept jurisdiction over the matter.

Petitioner initiated the instant habeas corpus proceeding on June 29, 1998, alleging that he was effectively denied his Sixth Amendment right to counsel when his attorney failed to file a notice of appeal on his behalf. The district court denied relief and also declined to hold an evidentiary hearing. Memorandum Opinion and Order, February 20, 2000, at 18. This appeal followed.

The parties and the district court all recognized that *Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), provides the standard against which petitioner's claim must be analyzed. Because of its centrality to this appeal, we will take a moment to outline the central teachings of that case. The Court began by noting that the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applied to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *Flores–Ortega*, 528 U.S. at 476–77 (to prevail on claim of ineffective assistance, one must show 1) that counsel's performance "fell below an objective standard of reasonableness" and 2) that this deficient performance prejudiced defendant).

Applying *Strickland*, the Court first made it unequivocally clear that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. at 477. It observed that a failure to file a notice of appeal when asked cannot be seen as a strategic decision because it represents a "purely ministerial task." *Id.*

In the instant case, petitioner has submitted an affidavit that asserts: "I asked my lead trial attorney. Granville Bradley,

---

* The Honorable Judith M. Barzilay, United States Court of International Trade, sitting by designation.

to file my appeal. He told me he would not file an appeal." While this statement is unequivocal, its authority is undermined somewhat by other statements included in the affidavit itself as well as by an affidavit submitted by Mr. Bradley. First, petitioner contends that "I did not know that I could have gotten the trial court to appoint another attorney for my appeal." During sentencing, however, petitioner was explicitly advised by the trial court that he had the right to appeal and, "[i]f you are unable to obtain counsel for an appeal, counsel will be appointed without costs." When asked if he understood his appellate rights, he answered affirmatively. Second, petitioner states that at sentencing he was "on psychotropic drugs due to mental illness." While this second statement, if true, might support the argument that the trial court's explanation of his right to appeal was not necessarily effective in light of petitioner's alleged mental state, it likewise calls into question the overall reliability of petitioner's recollection of events, including whether or not he requested an appeal. More importantly, petitioner's affidavit is directly contradicted by one sworn by Mr. Bradley, which states, "Pitcher never asked me to file an appeal on his behalf." In short, the facts before us are insufficient to establish unequivocally that petitioner asked his attorney to appeal and was refused. Rather, this case poses the same question as that faced by the Court in *Flores-Ortega:* "Is counsel deficient for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other?" *Id.* at 477.

The Court answered its question in these terms:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not

filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

. . . .

> We ... hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the

defendant seeks an end to judicial proceedings.... Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

. . . .

The second part of the *Strickland* test requires the defendant to show prejudice from counsel's deficient performance.

. . . .

... Accordingly, we hold that, to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

*Flores–Ortega,* 528 U.S. at 478–84 (citations omitted).

With this guidance in mind, we turn to the record in this case, mindful that no hearing on the matter has been conducted in state or federal court and, therefore, the testimony before us, which comes exclusively by way of affidavit, has not been fully developed by adversarial questioning.

As did the Court in *Flores–Ortega,* we first ask, Did Granville Bradley "consult" with petitioner as that term is defined in *Flores–Ortega:* that is, did Mr. Bradley advise petitioner about the advantages and disadvantages of taking an appeal, and make a reasonable effort to discover the petitioner's wishes. *Id.* at 478. According to his affidavit, Mr. Bradley advised petitioner not to file an appeal after speaking with another attorney, James Willis, about the prospect. For his part, Mr. Willis only observed a "small portion" of the trial and

did not review the trial for error. As already mentioned, petitioner denies any consultation with his attorney; rather, he claims that he asked for an appeal and was flatly refused.

While all three affidavits corroborate that an exchange of some sort between petitioner and Mr. Bradley concerning an appeal occurred, it is impossible for us to divine from these cryptic statements (each affidavit consists of little more than a page) whether that colloquy constituted the kind of weighing of the pros and cons of an appeal that *Flores–Ortega* clearly envisages. Consequently, we will assume for the moment that no consultation occurred and ask the subsidiary question posed by the Court: Did counsel have an obligation to consult with petitioner? *Flores–Ortega,* 528 U.S. at 478.

That question can be answered affirmatively if the petitioner demonstrates either that a rational person in his position would wish to appeal or that he "reasonably demonstrated to counsel that he was interested in appealing." *Flores–Ortega,* 528 U.S. at 480. As already discussed, the record before us is insufficient to establish that petitioner indicated a desire to appeal. With respect to whether a rational person in petitioner's situation would wish to appeal, there are a few considerations that weigh in petitioner's favor. First, the contested conviction came as the result of a trial and not a guilty plea, a circumstance that the Court recognized as "highly relevant" because a guilty plea substantially reduces the scope of potentially appealable issues. *Id.* Second, as the state conceded during oral argument, petitioner would likely not be subject to the death penalty in the event that he secured a new trial as the result of an appeal.[1] This fact, coupled

---

1. Petitioner relies upon *Bullington v. Missouri,* 451 U.S. 430, 445, 101 S.Ct. 1852, 68

L.Ed.2d 270 (1981), for the proposition that double jeopardy considerations would shield

with the length of his sentence, means that he had very little to lose with respect to potential punishment; under the circumstances, a rational person might decide that he might as well roll the dice. Third, the affidavits submitted by attorneys Willis and Bradley provide no information about the potential appellate issues that were considered before petitioner was advised against an appeal, making it difficult for us to determine whether a "rational defendant" in petitioner's situation would wish to appeal. An affidavit submitted by public defender David Hanson states that Mr. Bradley "saw no reason to appeal because they had 'won' the case." While Mr. Bradley no doubt had reason to be pleased that his client had avoided the death penalty, it does not excuse him from considering appellate issues and discussing them with his client, particularly in light of the fact that the death penalty had been taken off the table. Perhaps he did so; however, there is no firm indication of the fact in the scanty record before us.

As the preceding discussion indicates, the record before this court on appeal

makes it virtually impossible for us to apply the analytical framework erected by *Flores–Ortega.* We are asked to resolve the following questions based upon conflicting affidavits: 1) Did petitioner explicitly request that an appeal be filed on his behalf? 2) Did trial counsel consult with petitioner as that term is defined by *Flores–Ortega;* that is, did he explain the pros and cons of an appeal and make a reasonable effort to discern whether petitioner wished to take an appeal? 3) Would a rational person in petitioner's position have wished to appeal? and 4) Did petitioner demonstrate that there was a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed? [2] To resolve these questions, we must know what appellate issues were considered and rejected by trial counsel.[3] Otherwise, it is impossible—especially given that no transcript of the trial itself has yet been produced—to determine whether any appellate avenues were sufficiently viable to make a rational defendant request an appeal.

him from the death penalty in the event of a retrial. We note that the Supreme Court has recently distinguished *Bullington. Sattazahn v. Pennsylvania,* 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). Looking to *Bullington* and *Arizona v. Rumsey,* 467 U.S. 203, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984), the Court concluded that "the relevant inquiry for double-jeopardy purposes [i]s not whether the defendant received a life sentence the first time around, but rather whether a first life sentence was an 'acquittal' based on findings sufficient to establish legal entitlement to the life sentence." *Sattazahn,* 123 S.Ct. at 738. Thus, under limited circumstances, a defendant can be subject to the death penalty on retrial even if he received a life sentence in the first trial. Based upon the comments of counsel for both parties, we assume that these limited circumstances do not apply in petitioner's case. Like so much else in this appeal, however, the record and briefing are inadequate to make a final assessment of this

point. In any event, the resolution of this question is only important insofar as might affect whether a rational defendant would have wished to appeal. Since *Bullington* had not been distinguished by *Sattazahn* at the time that petitioner was called upon to make a decision regarding an appeal, defense counsel would presumably have told petitioner that he would not be subject to the death penalty on retrial.

**2.** This fourth question relates to prejudice. *See Flores–Ortega,* 528 U.S. at 784. Questions two through four are obviously interrelated and it is therefore not surprising that the inadequacy of the record as to one affects our ability to answer them all.

**3.** As the district court recognized, petitioner need not show that potential appellate grounds would necessarily have merit in order to prevail on this issue. Memorandum Opinion and Order at 16 n. 7.

While we are mindful of the demands upon the district court's time, we believe that this is a case that merits an evidentiary hearing, and, under the circumstances of this case, we are satisfied that such a hearing is not barred by 28 U.S.C. § 2254(e)(2). This avenue will afford the district court an opportunity to judge the credibility of the witnesses, who we presume will include both petitioner and trial counsel, and thereby assist us in resolving the conflicting statements found in their affidavits. Any factual findings made by the district court will then be reviewed by us only for clear error in the event of a second appeal. *Greer v. Mitchell*, 264 F.3d 663, 671 (6th Cir.2001).

The judgment of the district court is therefore **vacated** and the cause **remanded** for further proceedings consistent with this opinion.