**Wynn SATTERLEE, Petitioner,**

v.

**Hugh WOLFENBARGER, Respondent.**

**No. CIV. 03–71682–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 23, 2005.

James S. Lawrence, Royal Oak, MI, for Petitioner.

Brenda E. Turner and Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Respondent.

### OPINION AND ORDER CONDITIONALLY GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS [1]

TARNOW, District Judge.

Wynn Satterlee, ("petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction on one count of conspiracy to deliver over 650 grams of cocaine. For the reasons stated below, petitioner's application for writ of habeas corpus is **CONDITIONALLY GRANTED.**

### I. Background

Petitioner was convicted following a jury trial in the Ingham County Circuit Court and was sentenced to 20 to 30 years in prison.

On April 15, 2005, this Court granted petitioner an evidentiary hearing on his ineffective assistance of counsel claims. This Court further found at the time, for reasons stated in greater detail in its opinion and order, that petitioner's claims were not procedurally defaulted.[2]

In his first and second claims, petitioner alleged that his trial counsel was ineffective for failing to adequately communicate a plea offer that had been made to him by the prosecutor prior to trial. As part of his eighth claim, petitioner contends that this same counsel was ineffective for not raising his own ineffectiveness at trial as a claim on petitioner's direct appeal.

An evidentiary hearing was conducted on June 1, 2005. The first witness to testify was petitioner's trial and appellate counsel, David Dodge. Mr. Dodge testified that petitioner had been charged with conspiracy to deliver 650 grams or more of cocaine. Dodge indicated that the penalties for this offense were either twenty to thirty years in prison or mandatory life in prison without parole. Dodge indicated that his office was retained by petitioner on May 28, 1998. Petitioner's first attorney, Thomas Bengston, remained on the case as a consultant to the defense.

Dodge testified that when he was first retained by petitioner, the prosecution had made a plea offer with a sentence agreement of twelve to twenty years. Dodge admitted that he was aware that shortly after his arrest, petitioner had made a statement to police officials in Ingham County, in which he detailed his involvement in cocaine trafficking. Dodge knew that petitioner cooperated with police authorities so that he could obtain pretrial release on bond. Dodge acknowledged that one purpose of a defendant's proffer to the police concerning his or her involvement in drug trafficking activities would be to obtain a plea bargain from the prosecutors. Dodge had no recollection of petitioner and him meeting with the prosecutor and law enforcement officials for proffer discussions on November 10, 1998, the date of a pre-trial conference.

Dodge testified further that he engaged in discussions with Assistant Prosecutor John Cipriani concerning a plea. Dodge testified that petitioner had authorized him to accept a sentence agreement of no greater than one to twenty years.

Dodge identified Plaintiff's Exhibit 3 as a letter that he sent to petitioner on No-

---

**1.** Staff Attorney Daniel H. Besser provided quality research assistance.

**2.** Opinion and Order attached as Appendix A to this Opinion.

vember 30, 1998. In this letter, Dodge informed petitioner that the prosecutor's office was offering seven to twenty years without any cooperation from petitioner, and was offering a resolution of three to seven years if petitioner agreed to cooperate. Dodge was unsure whether this letter had been sent by mail to petitioner or transmitted by fax machine, or both. Dodge was unsure whether he had any conversations with petitioner between November 30, 1998 and the first day of trial, December 7, 1998.

Mr. Dodge was asked by petitioner's current counsel whether Assistant Prosecutor John Cipriani ever made a plea offer regarding a six to twenty year sentence. Dodge replied that at one point, Cipriani's offer fell below a minimum seven year sentence, but that this was dependent upon petitioner's full and complete cooperation. However, Dodge testified further that such a deal was never consummated, because he did not have any authority from petitioner to negotiate a sentence bargain greater than one to twenty years.

Dodge did not recall any discussions on the morning of trial concerning any plea offers, claiming he could not remember whether any plea offer even remained open on the day of trial. Upon further questioning, Dodge conceded that the prosecution had a strong case against petitioner. Dodge acknowledged that in such cases, plea negotiations are important and should take place. Dodge also testified that although there was an agreement between himself and Mr. Cipriani that petitioner's proffer statement could not be used as direct evidence against him if he went to trial, the proffer statement could have been used to impeach petitioner's credibility had he chosen to testify at trial.

Dodge testified that the fee arrangement between himself and petitioner called for petitioner having to pay higher fees if the case went to trial. Dodge explained that the initial retainer fee was $ 25,000.00, with an additional fee of $ 25,000.00 if petitioner went to trial.

Dodge further testified that he was retained by petitioner's family immediately after sentencing to represent petitioner on appeal. Dodge testified that he received $ 5,000.00 for the appeal. Although Dodge testified that he had handled other appeals from criminal cases where he had been trial counsel, he acknowledged that he never raised an ineffective assistance of trial counsel claim against himself.[3]

On cross-examination, Dodge testified that he did not recall whether a plea offer had been made on the day of trial, but insisted that he would have communicated such an offer to petitioner.

John Cipriani testified that he was the assistant prosecutor assigned to petitioner's case. Cipriani testified that petitioner had been charged with delivery or possession with intent to deliver over 650 grams of a controlled substance. The penalty for this crime was either twenty to thirty years or life imprisonment.

Cipriani acknowledged that after petitioner was extradited from Nevada to Michigan to face the charges, petitioner was given an opportunity by law enforcement officials to proffer a statement, in which petitioner would provide information concerning his drug dealing activities. Cipriani related that he and the police would make a plea offer based on the nature of the information proffered by a defendant. Cipriani indicated further that if a defendant wanted to continue to cooperate, he

---

**3.** This Court previously found that any procedural default of petitioner's ineffective assistance of trial counsel claims was excused in part by the fact that he was represented by the same attorney on his appeal of right. *See* Appendix A, p. 6.

or she could potentially obtain a more advantageous plea offer. Cipriani testified that petitioner initially made a four page statement on February 12, 1998 to the police, in which he detailed his knowledge and participation in the distribution of cocaine. Cipriani was unaware of any occasion in which petitioner refused to cooperate with authorities.

Cipriani testified that the first plea offer made to petitioner was for him to receive a sentence agreement of twelve to twenty years. Eventually, the plea offer improved from twelve to twenty years to seven to twenty years. Prior to trial, there was a firm offer of seven to twenty years. Cipriani denied making any plea offers in the three to seven years range.

Finally, on the day of trial, Cipriani offered petitioner six to twenty years in prison in exchange for his plea of guilty. Cipriani testified that the offer of six to twenty years did not require any further cooperation from petitioner. Cipriani testified that he communicated this offer to petitioner's counsel, David Dodge. He did not communicate the plea offer directly to petitioner. Although he observed discussion between Dodge and petitioner, Cipriani conceded that he had no personal knowledge about whether Dodge communicated this offer to petitioner. Cipriani did not hear petitioner inform Dodge that he refused to accept this plea offer. Instead, Dodge returned to Cipriani "and said we're going to have a trial or that's not good enough, or something to that effect."

Petitioner testified that after his arrest on this charge, he made a four page statement to the police in which he described his involvement in drug trafficking. Petitioner indicated that the purpose of his proffer was to cooperate in order to obtain some reduction in the charges. Petitioner was aware that he was facing life in prison on this charge.

Petitioner's first attorney, Thomas Bengston, informed him that the prosecutor's initial plea offer was twelve to twenty years. Petitioner rejected the offer as being too high, but he continued to cooperate with the police. Petitioner met in Mr. Bengston's office with narcotics officers on four or five dates, where he provided the officers with information concerning narcotics trafficking. On one of these occasions, agents from the Federal Bureau of Investigation also questioned him. Petitioner testified that he never refused to cooperate.

Petitioner indicated that he contacted David Dodge in April of 1998 and retained him as counsel. Petitioner testified that he hired Dodge because of his reputation in obtaining advantageous plea bargains for his clients. After Dodge was retained, petitioner testified that he met on two more occasions with the police to provide them with information.

Petitioner testified that several other plea offers were related to him by Dodge. Dodge and Bengston advised petitioner of an offer calling for an eight year minimum sentence, which petitioner rejected as being too high. Subsequently, petitioner met with Dodge, Cipriani, and several police officers following his pre-trial hearing on November 10, 1998. At this meeting, petitioner again gave information to the officers. Petitioner claimed that he was doing this, in order to "seek the very best deal I could get."

Prior to trial, petitioner received permission from the state trial court to go to the State of Nevada on business. Petitioner was shown Plaintiff's Exhibit 3, the letter dated November 30, 1998, which advised petitioner of the offer of seven to twenty years. Petitioner testified that he never saw this letter prior to his trial. Petitioner states that he was no longer living at the Timberidge Drive address listed on the

letter, having moved to another address in September. Petitioner testified that he had previously advised his counsel about his new address. Petitioner further indicated that he was never verbally advised of the seven to twenty year sentence agreement that was mentioned in the letter.

On December 4th, the Friday prior to trial, petitioner telephoned Dodge, who informed petitioner that all plea offers "were off the table" and they were proceeding to trial. Petitioner was shocked at this news, because he had cooperated with the authorities for almost a year in order to obtain a plea bargain.

Petitioner testified that Dodge never informed him on the day of trial about the six to twenty year sentence that was being offered to him, nor did he hear John Cipriani, the assistant prosecutor, make such an offer. Petitioner denied making any statements to either his attorney or the prosecutor on the day of trial, in which he rejected any plea offers. Petitioner testified that he would have accepted the plea bargain offer of six to twenty years in prison had it been communicated to him.

Petitioner acknowledged that the fee agreement in this case called for Mr. Dodge to receive more money if he went to trial. Petitioner denied that he personally contacted Dodge to represent him on appeal.

On cross-examination, petitioner denied ever telling Dodge that he would only accept a plea bargain with a sentence agreement of one to twenty years in prison. In response to a question from this Court, petitioner indicated that it was his posture throughout the entire pre-trial period that he was going to be pleading guilty. Petitioner was also aware that any plea agreement would involve prison time.

Petitioner's mother, Margaret Satterlee, testified that she never received a copy of the letter dated November 30, 1998, which contained the plea offer of seven to twenty years. Ms. Satterlee confirmed that the fee agreement with Dodge called for him to receive more money if the case went to trial. Ms. Satterlee further testified that after petitioner was sentenced, Mr. Dodge approached her in court about handling the appeal. Ms. Satterlee was never aware of any plea offer of six to twenty years.

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner had ineffective assistance of counsel relating to plea negotiations.

II. Petitioner never rejected the prosecutor's offer because he never heard of it, and did cooperate, therefore, he should be permitted to accept the offer now.

III. Untruthful or perjured testimony and prosecutor argument justifies the grant of a new trial.

IV. Petitioner had ineffective assistance of counsel where counsel used the wrong rule to seek admission of evidence, and rebuffed the judge's suggestion about the right rule.

V. Petitioner had ineffective assistance of counsel where counsel failed to object to argument and profile testimony about characteristics of drug dealers.

VI. Petitioner had ineffective assistance of counsel where counsel failed to object to leading questions that changed a witness's testimony.

VII. Petitioner had ineffective assistance of counsel where counsel failed to object to argument shifting the burden of proof.

VIII. Petitioner was prejudiced by ineffective assistance of appellate counsel, where counsel failed to raise issues including ineffective assistance of counsel against himself.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

 A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11, 120 S.Ct. 1495.

## III. Discussion

Petitioner contends in his first and second claims that his trial counsel was ineffective for failing to adequately communicate a plea offer that had been made to him by the prosecutor prior to trial.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such performance prejudiced his defense. *Id.*

 The Court finds that petitioner is entitled to habeas relief on his ineffective assistance of counsel claims. A defense attorney's failure to notify his client of a prosecutor's plea bargain offer constitutes defective performance, for the purpose of a claim of ineffective assistance of counsel. *See Griffin v. United States*, 330 F.3d 733, 737 (6th Cir.2003); *See also Rompilla v. Beard*, —— U.S. ——, —————— 125 S.Ct. 2456, 2464–65, —— L.Ed.2d —— (2005)(trial counsel has a reasonable duty to investigate defendant's case). The second element of the *Strickland* test in the plea offer context is that there is a reasonable probability the petitioner would have pleaded guilty given competent advice. *Griffin*, 330 F.3d at 737. The Sixth Circuit

has declined to hold that a defendant must support his own assertion that he would have accepted the plea offer with additional objective evidence and "[a] substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." *Id.* at 737.

This Court first finds that the petitioner has established by clear and convincing evidence that the prosecutor made a plea offer on the day of trial to allow petitioner to plead guilty in exchange for a sentence of six to twenty years. Mr. Cipriani, the assistant prosecutor in this case, acknowledged that such a plea offer was made, and this fact has not been disputed by respondent.

Secondly, this Court finds that the plea offer of six to twenty years was never communicated to petitioner by his attorney David Dodge. In so ruling, this Court is finding that petitioner's testimony that no such offer was ever conveyed to him prior to trial to be more credible than Mr. Dodge's testimony. Although Mr. Dodge claimed that it would be his practice to communicate all plea offers to a client, Mr. Dodge was unable to recall whether a plea offer was made on the day of trial or whether he discussed such an offer with petitioner.

More importantly, in all aspects, this Court finds petitioner's testimony, the testimony of his mother, and that of assistant prosecutor John Cipriani, to be more credible than Mr. Dodge's testimony on a number of matters. It is the province of the district court before which a habeas corpus proceeding is taking place to make credibility determinations. *See Stidham v. Wingo,* 482 F.2d 817, 820 (6th Cir.1973).

Mr. Dodge had difficulty remembering most of the details of this case. This Court finds it hard to believe that an attorney would be unable to recall even the most basic details from a case in which he received a fee in excess of $ 50,000.00. In addition, although Mr. Dodge claimed that he was only authorized by petitioner to accept a plea offer of one to twenty years, Mr. Cipriani claimed that he never heard petitioner offer to plead guilty in exchange for a sentence of one to twenty years.

Further, petitioner and his mother both testified that the letter from November 30, 1998 which contained a reference to the plea offer of seven to twenty years, was never mailed or faxed to them at any address. Dodge conceded that he did not know if this letter had been mailed or sent by fax machine to petitioner. Dodge also could not recall having any discussions with petitioner concerning any plea offers between the date that he sent this letter on November 30, 1998 and the trial date of December 7, 1998. This diminishes the credibility of Dodge's testimony that it would be his practice to communicate all plea offers to his clients. If this were the case, the Court questions why Dodge would have made no attempts to contact petitioner by telephone or other means prior to trial to determine whether petitioner was aware of the plea offer of seven to twenty years and whether it would be desirable for him to accept it. Finally, Dodge's testimony that any plea offers which went below a minimum sentence of seven years were conditioned upon petitioner providing additional cooperation to the authorities was refuted by John Cipriani's testimony that the offer of six to twenty years was not conditioned upon petitioner providing any additional assistance to the authorities.

Another factor which casts doubt on Dodge's credibility and enhances petitioner's credibility concerning whether the plea agreement of six to twenty years was

actually communicated to petitioner is the fee arrangement, which called for Dodge to receive an additional $ 25,000.00 if the case went to trial, as opposed if petitioner pleaded guilty. The fee arrangement created a disincentive for Dodge to seek a plea agreement, further calling into question both his credibility at the evidentiary hearing and the effectiveness of his representation in this case. *See e.g. Winkler v. Keane*, 7 F.3d 304, 307–08 (2nd Cir.1993)(contingency fee agreement, under which defense counsel was to receive additional $ 25,000 if defendant were acquitted or otherwise not found guilty, created an actual conflict of interest in murder prosecution. That is, defense counsel had a disincentive to seek a plea agreement, or to put forth mitigating defenses that would result in a conviction of a lesser included offense).

Moreover, petitioner clearly established that he sought to plead guilty from the time of his arrest. He was not interested in going to trial. Petitioner testified that he cooperated with law enforcement officials from the start in order to obtain the most advantageous plea agreement. Petitioner, in fact, testified that he retained Dodge, because of the attorney's reputation in obtaining favorable plea or sentencing agreements for his clients.

Finally, petitioner received a sentence of twenty to thirty years after trial. Clearly, the large disparity between this sentence and a sentence of six to twenty years supports a finding that there is a reasonable probability that petitioner would have accepted the plea offer that was made in this case. *Griffin, supra* at 737. See also, *United States v. Blaylock*, 20 F.3d 1458, at 1468 (9th Cir.1994).

The question becomes what the appropriate habeas remedy would be in this case. A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. *Hilton v. Brauns-*

*kill*, 481 U.S. 770, 775, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987). 28 U.S.C. § 2243 authorizes federal courts to dispose of habeas corpus matters "as law and justice require". In certain circumstances, federal courts have conditioned the issuance of a writ on the state's conducting proceedings narrower than a full retrial. *See Henderson v. Frank*, 155 F.3d 159, 168 (3rd Cir.1998). Such cases make clear that conditional writs must be tailored to ensure that all constitutional defects will be cured by the satisfaction of that condition. *Id.* Cases involving deprivations of the Sixth Amendment right to the assistance of counsel are likewise subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation. *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The most appropriate habeas remedy is to grant a writ of habeas corpus conditioned upon the State of Michigan permitting petitioner to plead guilty to a lesser offense with a sentence agreement of six to twenty years.

Because this Court's conclusion that petitioner is entitled to habeas relief on this first and second claims is dispositive of the petition, the Court considers it unnecessary to review petitioner's other claims and declines to do so.

## IV. ORDER

IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED. UNLESS THE STATE TAKES ACTION TO OFFER PETITIONER A PLEA OFFER WITH A SENTENCE AGREEMENT OF SIX TO TWENTY YEARS WITHIN SIXTY (60) DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT

TO RELEASE HIM FROM CUSTODY
FORTHWITH.

## APPENDIX A

### OPINION AND ORDER GRANTING AN EVIDENTIARY HEARING ON PETITIONER'S FIRST, SECOND, AND EIGHTH INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Wynn Satterlee, ("petitioner"), presently confined at the Macomb Correctional Facility in New Haven, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney James Sterling Lawrence, petitioner challenges his conviction on one count of conspiracy to deliver over 650 grams of cocaine. For the reasons stated below, the Court will **GRANT** an evidentiary hearing with respect to three of petitioner's ineffective assistance of counsel claims.

### I. Background

Petitioner was convicted of the above offense following a jury trial in the Ingham County Circuit Court and was sentenced to 20 to 30 years in prison.

Prior to trial, petitioner's counsel informed him that the Ingham County Prosecutor's Office was willing to negotiate a plea, whereby petitioner could receive a sentence of seven to twenty years in exchange for his cooperation, and a sentence of ten to twenty years even without cooperating. Petitioner rejected this offer.

On November 30, 1998, approximately one week before trial, petitioner's trial counsel purportedly sent a letter to petitioner's home, informing him that the Ingham County Prosecutor had improved the plea offer and was now willing to offer petitioner a sentence of three to seven years in exchange for his cooperation, and seven to twenty years if he did not cooperate. Petitioner claims that he never received this letter from his counsel concern-ing the improved plea offer, learning about this letter only after his appeal of right had concluded and when his trial counsel, who had also represented petitioner on his appeal of right, forwarded petitioner his file. Petitioner claims that he had left the state of Michigan just prior to trial, to handle business matters in the state of Nevada. He further alleges that his counsel knew that he was out of state, because the two men had spoken by telephone. Petitioner claims that his counsel made no other attempts to communicate the improved plea offer to him, even though counsel was aware that petitioner was not in the state of Michigan prior to trial. In an affidavit, petitioner's current counsel, James Sterling Lawrence, claims that he spoke with the prosecuting attorney, John Cipriani. Cipriani denied that there was ever a plea offer of three to seven years, but purportedly admitted that a plea offer of six to twenty years was made to petitioner.

Petitioner was represented on his direct appeal by the same attorney who had represented him at trial. Petitioner's conviction was affirmed on appeal. *People v. Satterlee*, 2000 WL 33521090 (Mich.App. March 28, 2000); *lv. den.* 462 Mich. 902, 659 N.W.2d 227 (2000). Petitioner thereafter filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.*, which the trial court denied. *People v. Satterlee*, 98–73173–FH (Ingham County Circuit Court, July 24, 2001). The Michigan appellate courts denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Satterlee*, 242009 (Mich.Ct.App. November 4, 2002); *lv. den.* 468 Mich. 894, 661 N.W.2d 241 (2003). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner had ineffective assistance of counsel relating to plea negotiations.

II. Petitioner never rejected the prosecutor's offer because he never heard of it, and did cooperate, therefore, he should be permitted to accept the offer now.

III. Untruthful or perjured testimony and prosecutor argument justifies the grant of a new trial.

IV. Petitioner had ineffective assistance of counsel where counsel used the wrong rule to seek admission of evidence, and rebuffed the judge's suggestion about the right rule.

V. Petitioner had ineffective assistance of counsel where counsel failed to object to argument and profile testimony about characteristics of drug dealers.

VI. Petitioner had ineffective assistance of counsel where counsel failed to object to leading questions that changed a witness's testimony.

VII. Petitioner had ineffective assistance of counsel where counsel failed to object to argument shifting the burden of proof.

VIII. Petitioner was prejudiced by ineffective assistance of appellate counsel, where counsel failed to raise issues including ineffective assistance of counsel against himself.

## II. Discussion

The Court will discuss petitioner's first, second, and eighth ineffective assistance of counsel claims together for purposes of judicial clarity.

### 1. Standard of Review

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such performance prejudiced his defense. *Id.* The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Johnson v. Warren,* 344 F.Supp.2d 1081, 1095 (E.D.Mich.2004).

### 2. The individual claims.

A. Petitioner is entitled to an evidentiary hearing on his first, second and eighth ineffective assistance of counsel claims.

In his first and second claims, petitioner contends that his trial counsel was ineffective for failing to adequately communicate a plea bargain offer that had been made to him by the prosecutor prior to trial. As part of his eighth claim, petitioner contends that his counsel was ineffective for not raising this ineffective assistance of counsel claim on his direct appeal. Respondent contends that all of petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion and the Michigan appellate courts denied petitioner leave to appeal pursuant to M.C.R. 6.508(D).

Assuming that the state trial court's decision constituted an invocation of the procedural bar found in M.C.R. 6.508(D)(3), petitioner contends that any such default should be excused because of the ineffective assistance of appellate counsel. If petitioner can show that he received inef-

fective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir.2000).

In the present case, petitioner argues that any default for failing to raise his claims on direct appeal should be excused because he was deprived of the effective assistance of appellate counsel, in part because he was represented on direct appeal by the same attorney who represented him at trial. A number of cases have excused a habeas petitioner's failure to raise an ineffective assistance of trial counsel claim on his direct appeal, where the petitioner was represented on appeal by the same attorney who represented him at trial. *See e.g. Combs v. Coyle*, 205 F.3d 269, 275–77 (6th Cir.2000); *Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir.1988); *Alston v. Garrison*, 720 F.2d 812, 816 (4th Cir. 1983); *See also Whiting v. Burt*, 395 F.3d 602 (6th Cir.2005)(fact that attorney who represented petitioner on direct appeal also served as petitioner's attorney at trial might serve as cause for petitioner's failure to assert on direct appeal any claims based on ineffective assistance of trial counsel, although petitioner would be required to show prejudice before the default could be excused).

Moreover, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F.3d 538, 558, n. 17 (6th Cir.2004); *Johnson v. Warren*, 344 F.Supp.2d at 1089 n. 1.

This Court concludes that petitioner's first two ineffective assistance of counsel claims and his ineffective assistance of appellate counsel claim are not procedurally defaulted. The next question becomes whether petitioner is entitled to an evidentiary hearing on these claims.

A federal court must grant an evidentiary hearing to a habeas corpus applicant if:

(1) the merits of the factual dispute were not resolved in a state hearing;

(2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact finding procedure in state court was not adequate to afford a full and fair hearing;

(4) there is a substantial allegation of newly discovered evidence;

(5) material facts were not adequately developed at a state court hearing; or

(6) for any reason it appears that state trier of fact did not afford applicant a full and fair fact hearing.

*Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); 28 U.S.C.A. § 2243.

One of the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) states that if an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

(A) the claim relies on:

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder

would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). Diligence for purposes of the opening clause of this subsection of the AEDPA depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful. *Id.* at 435, 120 S.Ct. 1479. Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.*

Federal-state comity is not served by stating that a prisoner has "failed to develop the factual basis of a claim" where he was unable to develop his or her claim in state court despite diligent efforts to do so. In that circumstance, an evidentiary hearing is not barred by U.S.C. § 2254(e)(2). *Williams v. Taylor,* 529 U.S. at 437, 120 S.Ct. 1479. If there is no lack of diligence at the relevant stages in the state proceedings, a petitioner has not failed to develop the facts under the opening clause of the AEDPA governing whether a federal habeas petitioner may obtain an evidentiary hearing on a claim for which a petitioner has failed to develop a factual basis in state court proceedings, and petitioner will be excused from showing compliance with the balance of the subsection's requirements. *Id.*

The Court finds that petitioner is entitled to an evidentiary hearing on these ineffective assistance of counsel claims. In the present case, petitioner alleges that his trial counsel failed to adequately convey a plea bargain offer to him prior to trial. Petitioner has attached a letter from his trial counsel dated November 30, 1998, in which counsel informed petitioner that the Ingham County Prosecutor was willing to offer a sentence of three to seven years in exchange for his cooperation, and seven to twenty years without his cooperation. Petitioner claims in an affidavit that he never received this letter, in part, because he had gone to the State of Nevada on business. Petitioner alleges, however, that his counsel knew that he was in Nevada, because the two had spoken on the telephone, but never attempted to contact petitioner in Nevada to inform him of the plea bargain offer. In his affidavit, petitioner claims that his wife told him that this letter from counsel never arrived at their home. Petitioner's current counsel, James Sterling Lawrence, has also signed an affidavit, in which he claims that the prosecutor in this case informed him that there was a plea offer of six to twenty years made to petitioner prior to trial. In his affidavit, petitioner claims that he was never informed about this plea bargain offer. Petitioner indicates that had he been informed of this plea bargain offer, he would have accepted the offer, even though he had preferred a better plea bargain offer.

This Court concludes that petitioner is entitled to an evidentiary hearing on these ineffective assistance of counsel claims. By requesting an evidentiary hearing on his ineffective assistance of counsel claims in his state post-conviction proceedings, petitioner demonstrated due diligence, for purposes of § 2254(e)(2). *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir.2001); *Alexander v. Smith,* 342 F.Supp.2d 677, 690, n. 6 (E.D.Mich.2004).

Secondly, petitioner has stated a claim, which if true, could entitle him to habeas

relief. A defense attorney's failure to notify his client of a prosecutor's plea bargain offer constitutes defective performance, for the purpose of a claim of ineffective assistance of counsel. *See Griffin v. United States*, 330 F.3d 733, 737 (6th Cir.2003). The second element of the *Strickland* test in the plea offer context is that there is a reasonable probability the petitioner would have pleaded guilty given competent advice. *Id.* The Sixth Circuit has declined to hold that a defendant must support his own assertion that he would have accepted the plea offer with additional objective evidence and "[a] substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." *Id.* at 737. In this case, petitioner received a sentence of twenty to thirty years after trial. Clearly, the large disparity between this sentence and a sentence of six to twenty years, or less, if the letter from petitioner's counsel is to be believed, could support a finding that there is a reasonable probability that petitioner would have accepted either of the plea offers that were allegedly made in this case.

In the present case, factual questions as to the nature and quality of advice that petitioner received from counsel concerning any plea agreements that were offered by the state entitle petitioner to an evidentiary hearing on his ineffective assistance of counsel claim. *See Smith v. United States*, 348 F.3d 545, 553 (6th Cir.2003). In addition, because the affidavits submitted in this case are scanty and conflicting regarding the precise nature of the plea bargain offer made, an evidentiary hearing is also necessary. *See Pitcher v. Huffman*, 65 Fed.Appx. 979, 983–84 (6th Cir. 2003). Finally, because petitioner claims that he would have accepted the plea offer had he known of it, the claim of prejudice also requires an evidentiary hearing to determine the credibility of petitioner's allegations. *See Sims v. United States*, 343 F.Supp.2d 621, 624 (E.D.Mich.2004).

Accordingly, this Court concludes that petitioner is entitled to an evidentiary hearing on his claims that his trial counsel failed to communicate any plea bargain offers to him that were offered by the Ingham County Prosecutor. Petitioner is also entitled to an evidentiary hearing on his related claim that his counsel was ineffective for failing to raise this ineffective assistance of counsel claim on petitioner's direct appeal.

## III. CONCLUSION

Based upon the foregoing, the Court concludes that petitioner is entitled to an evidentiary hearing on his first and second ineffective assistance of counsel claims involving his trial counsel's alleged failure to advise him of a plea bargain offer made by the prosecutor and his related eighth claim involving appellate counsel's failure to raise this claim on direct appeal.