RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAMIE R. MADRIGAL,

> *Petitioner-Appellee/*
> *Cross-Appellant,*

Nos. 03-4118/4171

*v.*

MARGARET BAGLEY, Warden,

> *Respondent-Appellant/*
> *Cross-Appellee.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00522—James Gwin, District Judge.

Argued: June 8, 2005

Decided and Filed: June 27, 2005

Before: DAUGHTREY, CLAY, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for
Appellant. Timothy R. Payne, PUBLIC DEFENDER'S OFFICE, Columbus, Ohio, for Appellee.
**ON BRIEF:** Daniel R. Ranke, OFFICE OF THE ATTORNEY GENERAL, Cleveland, Ohio, for
Appellant. Timothy R. Payne, Susan M. Roche, PUBLIC DEFENDER'S OFFICE, Columbus,
Ohio, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. In April of 1996, during the robbery of a Kentucky
Fried Chicken (KFC) restaurant in Toledo, Ohio, KFC employee Misty Fisher was murdered. Less
than a week later, Chris Cathcart confessed to driving the getaway car and claimed that his
passenger, Jamie Madrigal, had been the robber. Madrigal, who was arrested shortly thereafter, had
a moustache and facial hair, features that none of the eyewitnesses had described. No physical
evidence found at the KFC connected Madrigal to the robbery/murder, and forensic experts could
not establish that the gun found in Madrigal's belongings was the murder weapon.

1

At trial, the question of identity was the main focus of the defense case. The proof presented by the state to establish that Madrigal was the robber included two statements made by Cathcart to the police, both of which were introduced into evidence. Cathcart did not testify.

In October of 1996, after an Ohio jury convicted Madrigal of aggravated murder and aggravated robbery, he was sentenced to death. After unsuccessfully appealing and seeking postconviction relief in the Ohio courts, Madrigal filed a habeas corpus petition in the United States District Court for the Northern District of Ohio. He claimed that his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated by the admission of Cathcart's two statements, that his attorney provided ineffective assistance during the mitigation phase, and that the trial court incorrectly instructed the jury regarding sentencing. The district court granted a conditional writ of habeas corpus on the Confrontation Clause issue, but denied relief as to the other claims. Both parties appeal the decision of the district court. For the reasons set forth below, we **AFFIRM** the district court's conditional grant of habeas corpus.

# I.  BACKGROUND

## A.     Factual background

Detailed accounts of the relevant facts are set forth in the opinions of both the district court and the Ohio Supreme Court. *See Madrigal v. Bagley*, 276 F. Supp. 2d 744, 751-54 (N.D. Ohio 2003); *State v. Madrigal*, 721 N.E.2d 52, 57-60 (Ohio 2000) (syllabus). In summary, this case arises from the April 1996 robbery of a KFC restaurant in Toledo, Ohio, during which the robber demanded that Fisher open the safe. When Fisher was unable to do so, the robber exclaimed "[n]ow you're playing, bitch," shot her in the back of the head, and fled the restaurant. Fisher died from the gunshot wound on the way to the hospital.

Eyewitness accounts were given to the police by the three remaining KFC employees and by two customers who were sitting at the drive-through window during the robbery. These witnesses described the robber as "a black man, medium complexion, in his late teens, early twenties, medium build, short hair, wearing tan boots, a dark-colored hooded sweatshirt, and baggy pants." *State v. Madrigal*, 721 N.E.2d at 58 (syllabus). They disagreed about whether the man's pants were jeans or brown Dickies with cuts on the legs. Moreover, as the district court noted, "none of the witnesses to the killing described the suspect as having a m[o]ustache or any facial hair." *Madrigal v. Bagley*, 276 F. Supp. 2d at 753.

Less than a week later, Chris Cathcart, a former employee of the KFC, confessed to driving the getaway car. Cathcart claimed that Jamie Madrigal, another former KFC employee, had been the robber. The police obtained a warrant, arrested Madrigal, and searched the residence where he was staying. Madrigal had both a moustache and facial hair at the time of his arrest, features that also appeared on his Ohio Identification Card. Neither his fingerprints, his blood, nor any other forensic evidence linking Madrigal to the crime were found inside the restaurant. And although the search of his belongings yielded a nickel-plated revolver, the experts who examined the gun could not state with certainty that it was the murder weapon.

## B.     Procedural background

Cathcart's two statements given to the police were introduced by the state in order to establish that Madrigal was the robber. The prosecution read both statements, comprising 79 pages of the transcript, into the record over defense counsel's objection. Cathcart refused to testify, having invoked his Fifth Amendment privilege.

In October of 1996, an Ohio jury convicted Madrigal of aggravated murder and aggravated robbery. The jury recommended a death sentence, which the trial court imposed. On direct appeal, the Ohio Supreme Court held that the admission of Cathcart's statements violated Madrigal's rights under the Confrontation Clause, but then decided that the error was harmless. After properly noting that the "inquiry [for harmless error] is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," *State v. Madrigal*, 721 N.E.2d at 63, the Ohio Supreme Court proceeded to engage in a very cursory analysis. The court's harmless error reasoning—in its entirety—was as follows:

> The strength of the state's case was found in the testimony of the eyewitnesses. Included in the eyewitness testimony is the out-of-court identification of Madrigal by Tracy and Corbett, as well as the in-court identifications by Tracy, Corbett, Conley, and Kerekes. The testimony of these witnesses was credible and compelling, compared to Cathcart's statements, which were self-serving and lacking in credibility. Therefore, the admission of Cathcart's statements, while error, was harmless beyond a reasonable doubt.

*Id.*

After his unsuccessful direct appeal, Madrigal sought postconviction relief in state court, which was denied by the trial court. The Ohio Court of Appeals affirmed the judgment of the trial court in November of 2000, and the Ohio Supreme Court denied further review.

Madrigal filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in March of 2002, claiming that his rights under the Confrontation Clause were violated by the admission of Cathcart's statements. He sought relief on several other grounds as well, including claims that his attorney provided ineffective assistance during the mitigation phase and that the trial court incorrectly instructed the jury regarding sentencing. The district court granted a conditional writ of habeas corpus on the Confrontation Clause issue, but denied relief as to the other claims. Madrigal was granted a certificate of appealability (COA) by the district court on his jury-instruction claim and we granted a COA on Madrigal's claim of ineffective assistance of counsel during the penalty phase. Both parties timely appealed the district court's decision.

## II. ANALYSIS

### A.    Standard of review

We "review[] the District Court's grant of habeas corpus relief *de novo*." *Harpster v. State of Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). The same standard applies to a district court's determination of whether an error was harmless. *Calvert v. Wilson*, 288 F.3d 823, 832-33 (6th Cir. 2002). As both parties note, Madrigal's habeas petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), so the statute is applicable. *See* 28 U.S.C. § 2254(d) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . .")

**B.      Confrontation Clause issue**

The state does not dispute that the trial court erred in admitting Cathcart's two statements.  But as the Ohio Supreme Court correctly noted, whether the error was harmless depends on "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," *State v. Madrigal*, 721 N.E.2d at 63; *see also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that a constitutional error is not harmless when it has a "substantial and injurious effect or influence in determining the jury's verdict") (citation and quotation marks omitted).  Where the reviewing court is in "grave doubt" as to whether the error was harmless, it should "treat the error, not as if it were harmless, but as if it affected the verdict."  *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Several factors should inform a court's analysis about whether such doubt exists in the context of a Confrontation Clause claim, including "[1] the importance of the . . . testimony in the prosecution's case, [2] whether the testimony was cumulative, [3] the presence . . . of evidence corroborating or contradicting the testimony of the witness on material points, [4] the extent of cross-examination otherwise permitted, and . . . [5] the overall strength of the prosecution's case."  *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

In the present case, none of the *Van Arsdall* factors suggest that the error was harmless.  As the district court correctly concluded, Cathcart's statement was central to the prosecution's case:

> [T]he prosecution did not have any physical or forensic evidence that tied Madrigal to the killing.  Law enforcement officials did not identify Madrigal's fingerprints in the KFC.  Nor did they find blood evidence from Misty Fisher on any of Madrigal's clothing or shoes.  Authorities did not find blood in Madrigal's car.  They also did not identify any glass particles from the shattered KFC window on any of Madrigal's belongings.  Ballistics evidence did not conclusively link the gun found in Madrigal's bag to the gun used in the crime.  Finally, no one found a KFC brown paper sack with money.  Instead of forensic or physical evidence, the bulk of the prosecution's case consisted of eyewitness testimony and Cathcart's statements.  However . . . the eyewitness[es]' testimony contained discrepancies about the suspect's description and left open doubt as to the identity of the shooter.  Therefore, as a confession by a co-defendant that directly implicated Madrigal, Cathcart's statements played an important part in the prosecution's case.

*Madrigal v. Bagley*, 276 F. Supp. 2d at 771-72.

The prosecution in fact emphasized the importance Cathcart's audiotaped statement by pointing out in its closing argument "twenty things from Cathcart's statement, ranging from the date of the robbery to the car used in the robbery, that [the prosecutor] argued corroborated the other witnesses' testimony." *Id*. at 772.  Thus, even if we accept the state's contention that the district court should not have considered the affidavit of a juror who asserted that the taped statement "helped to establish that Jamie Madrigal was indeed at the scene of the crime," *id*. at 777, the context of the trial leaves no doubt that Cathcart's statement was a crucial part of the prosecution's case.

The second, third, and fifth factors—whether the evidence was cumulative, whether there was corroborating or contradictory evidence, and whether the prosecution had a strong case—also cut in Madrigal's favor.  As the district court notes, "[g]iven the discrepancies in the eyewitness testimony, the failure of any eyewitness to describe the suspect as having facial hair, the lack of forensic evidence linking Madrigal to the crime, and the prosecution's emphasis on the importance of Cathcart's testimony, Madrigal's jury could have believed that Cathcart's statements reinforced the eyewitness testimony." *Id*. at 775; *see also Stapleton v. Wolfe*, 288 F.3d 863 (6th Cir. 2002) (holding that two confessions recounting similar events were not cumulative, because the jury "could have believed that

[] Foreman's statements and Studer's taped statements reinforced and corroborated each other," and concluding that the introduction of a taped confession by a nontestifying codefendant was not harmless error) (quotation marks omitted).

Finally, Madrigal had no opportunity to cross-examine Cathcart. As even the Ohio Supreme Court admitted, "[i]t cannot be said that Cathcart's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility. In fact, Madrigal's defense attempted to place the blame for the crime on Cathcart, which would have made the need for cross-examination even more crucial to the case." *State v. Madrigal*, 721 N.E.2d at 63 (citation and quotation marks omitted). The fact that Cathcart's statements were a central element of the prosecution's case, and that the defense theory was that Cathcart himself had committed the murder, creates "grave doubt," *O'Neal*, 513 U.S. at 435, about whether the admission of the statements was harmless.

In sum, we find an inconsistency in the Ohio Supreme Court's analysis regarding Cathcart's statements, where it finds them both significant to the prosecution's case and yet harmless beyond a reasonable doubt to Madrigal. They cannot be both. Thus, for the reasons cogently set forth in detail by the district court in its opinion at 276 F. Supp. 2d 744, 767-77, we hold that the decision of the Ohio Supreme Court was an unreasonable application of clearly established federal law as enunciated by the Supreme Court of the United States. *See Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

## C.    Other claims

The district court's conditional grant of habeas corpus requires that Ohio either release Madrigal or grant him a new trial. Our affirmance of that grant renders moot the additional trial defects alleged by Madrigal.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's conditional grant of habeas corpus.