*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

WYNN SATTERLEE,

      *Petitioner-Appellee,*

    *v.*

HUGH WOLFENBARGER,

      *Respondent-Appellant.*

Nos. 05-2013/2513

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-71682—Arthur J. Tarnow, District Judge.

Argued: June 9, 2006

Decided and Filed: June 30, 2006

Before: MOORE, COLE, and CLAY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. James Sterling Lawrence, Royal Oak, Michigan, for Appellee. **ON BRIEF:** Janet A. VanCleve, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellant. James Sterling Lawrence, Royal Oak, Michigan, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. These consolidated appeals concern the grant of habeas relief to Petitioner-Appellee Wynn Satterlee, a Michigan state prisoner who was convicted by jury and sentenced after his trial counsel failed to inform him of a favorable plea offer. The district court initially granted a conditional writ, ordering the state to reinstate the plea offer that Satterlee never received. When the state failed to comply, the district court granted an unconditional writ, ordering Satterlee's immediate release and the expungement of his record of conviction.

In No. 05-2013, the state challenges the judgment granting the conditional writ, arguing that Satterlee failed to exhaust state-court remedies and that the district court made a clearly erroneous factual finding. Because the state's arguments are without merit, we **AFFIRM**.

In No. 05-2513, the state challenges the judgment granting the unconditional writ, arguing that the remedies of immediate release and expungement exceeded the district court's power. Because the state's arguments are once again without merit, we **AFFIRM**, albeit with instructions

1

to clarify an ambiguity in the unconditional writ, which is discussed below.  We **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

Satterlee was convicted by a Michigan jury of conspiring to deliver more than 650 grams of cocaine and was sentenced to twenty to thirty years' imprisonment.  Satterlee appealed on grounds not relevant here.  The Michigan Court of Appeals affirmed, and the Michigan Supreme Court denied leave to appeal.  *People v. Satterlee*, No. 217262, 2000 WL 33521090 (Mich Ct. App. Mar. 28, 2000); *People v. Satterlee*, 659 N.W.2d 227 (Mich. 2000) (table decision).

Satterlee moved for relief from judgment pursuant to Michigan Court Rule 6.502, arguing, inter alia, that he was denied his Sixth Amendment right to the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985), when his trial attorney, David Dodge, failed to relay to Satterlee a favorable plea offer that he would have accepted.  The state trial court denied relief, and both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal.  Joint Appendix ("J.A.") at 93 (Circuit Court decision);[1]  J.A. at 199 (Court of Appeals decision); *People v. Satterlee*, 661 N.W.2d 241 (Mich. 2003) (table decision).

Satterlee filed a petition for a writ of habeas corpus.  The district court conducted an evidentiary hearing, where Dodge, John Cipriani (the state prosecutor in Satterlee's case), Satterlee, and Margaret Satterlee (Satterlee's mother) testified.  *Satterlee v. Wolfenbarger* (*Satterlee I*), 374 F. Supp. 2d 562, 570-74 (E.D. Mich. 2005) (ordering an evidentiary hearing); J.A. at 270-385 (Evid. Hr'g Tr.).  The district court made two findings of fact:  (1) "the prosecutor made a plea offer on the day of trial to allow petitioner to plead guilty in exchange for a sentence of six to twenty years"; and (2) "the plea offer of six to twenty years was never communicated to petitioner by his attorney David Dodge."  *Satterlee I*, 374 F. Supp. 2d at 568-69.  These factual findings were based largely on the determination that Satterlee, his mother, and Cipriani were more credible than Dodge.  *Id.*

The district court concluded that "there is a reasonable probability that petitioner would have accepted the plea offer that was made in this case."  Relying on our decision in *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003), which had in turn relied on *Strickland* and *Hill*, the district court granted a conditional writ based on Satterlee's ineffective-assistance-of-counsel ("IAC") claim.  *Id.* at 567, 569.  The district court gave the state sixty days to reinstate the six-to-twenty-year plea offer.  *Id.* at 569-70.  The state appeals this order in No. 05-2013, arguing that Satterlee failed to exhaust state-court remedies and that the district court made a clearly erroneous factual finding.

When the conditional writ's sixty-day deadline passed, Satterlee applied for his immediate release, to which the state responded by filing a motion in the district court for a stay pending its appeal in No. 05-2013.  The district court denied the state's motion for stay and granted Satterlee an unconditional writ, ordering his immediate release and the expungement of the record of his conviction.  *Satterlee v. Wolfenbarger* (*Satterlee II*), No. Civ. 03-71682-DT, 2005 WL 2704877 (E.D. Mich. Oct. 19, 2005).  The state appeals this order in No. 05-2513, arguing that the remedies of immediate release and expungement exceeded the district court's power.

## II.  STANDARD OF REVIEW

In a habeas proceeding, we review de novo the district court's legal conclusions, including its ultimate decision to grant or deny the writ, and we review for clear error its factual findings.

---

[1]The joint appendices filed in these two appeals are virtually identical.  For the sake of simplicity, we cite only to the joint appendix filed in No. 05-2013.

*Burton v. Renico*, 391 F.3d 764, 770 (6th Cir. 2004), *cert. denied*, — U.S. —, 126 S. Ct. 353 (2005); *Sawyer v. Hofbauer*, 299 F.3d 605, 608 (6th Cir. 2002).

### III.  THE CONDITIONAL WRIT (No. 05-2013)

#### A.  Exhaustion/Fair Presentment

The state first argues that Satterlee did not satisfy the exhaustion requirement.  A writ of habeas corpus may not be granted unless the petitioner has exhausted available state-court remedies. 28 U.S.C. § 2254(b)(1).  In order to satisfy the exhaustion requirement, "a petitioner's claim must be 'fairly presented' to the state courts before seeking relief in the federal courts." *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  "It is sufficient if 'the substance of a federal habeas corpus claim' be presented to the state courts, and there are instances in which 'the ultimate question for disposition' will be the same despite variations in the legal theory or factual allegations urged in its support." *Id.* at 612-13 (quoting *Picard*, 404 U.S. at 277-78).  Whether a habeas petitioner has satisfied the exhaustion requirement is a question of law that we review de novo. *E.g.*, *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005); *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 368 (3d Cir. 2002); *Greene v. Lambert*, 288 F.3d 1081, 1086 (9th Cir. 2002); *Fortini v. Murphy*, 257 F.3d 39, 44 (1st Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002).

The state concedes that Satterlee's legal theory — that he was denied his Sixth Amendment right to the effective assistance of counsel under *Strickland* and *Hill* when his trial attorney failed to relay a favorable plea offer — was fairly presented to the state courts.  Appellant Br. (05-2013) at 20.  Its exhaustion argument is instead premised on the contention that Satterlee did not fairly present to the state courts the factual allegations underlying his legal theory.  According to the state, although the district court granted the writ based on Dodge's failure to relay a six-to-twenty-year offer made the morning of trial ("morning offer"), before the state courts Satterlee relied on Dodge's failure to relay a different offer — one that Dodge allegedly sent via letter to Satterlee a week before trial ("letter offer").  Thus, the state argues, Satterlee did not fairly present his IAC claim to the state courts.

The state's argument is without merit, as it is wrong on the facts.  Although his IAC argument in the state postconviction proceedings focused on the letter offer, Satterlee also notified the state courts of the morning offer:

> There will be some factual disputes to be resolved at a hearing.  The letter of David Dodge of November 30, 1998, which Defendant received only after being convicted and sentenced, refers to a plea offer of 3 to 7 years.  Yet, present counsel spoke by telephone with prosecutor John Cipriani, and *Mr. Cipriani states* that there was never a plea offer of 3 to 7 years, but *that there was a plea offer of 6 to 20 years*. (See affidavit of James Lawrence).  Something peculiar is going on here, where attorney Dodge after sentence comes up with letters never before seen by Defendant, allegedly advising him of an offer, yet the prosecutor says that offer was never made. At this point, Defendant and his counsel are unsure of who to believe, prosecutor Cipriani or attorney Dodge, who directly contradict each other.  An evidentiary hearing is clearly needed.

J.A. at 104 (Br. in Supp. of Mot. for Relief from J. at 2 n.1) (emphases added), 155 (Br. in Supp. of Application for Leave to Appeal at 5 n.1) (emphases added).  Therefore, Satterlee informed the state courts of Dodge's failure to relay *both* plea offers, and the relief eventually granted by the district

court was based on one of them.  Accordingly, Satterlee fairly presented both the legal and factual bases of his IAC claim to the state courts.**2**

## B.  Factual Findings/Credibility

The state next objects to a factual finding made by the district court.  We review for clear error a factual finding made pursuant to a habeas court's evidentiary hearing.  *Carter v. Mitchell*, 443 F.3d 517, 535 (6th Cir. 2006); *Sawyer*, 299 F.3d at 608.  "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Norris v. Schotten*, 146 F.3d 314, 323 (6th Cir.) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)), *cert. denied*, 525 U.S. 935 (1998).  "'If there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *United States v. Kellams*, 26 F.3d 646, 648 (6th Cir. 1994)).  We afford the district court particular deference when its factual findings are based on credibility determinations.  *Moss v. United States*, 323 F.3d 445, 457 (6th Cir.), *cert. denied*, 540 U.S. 879 (2003); *United States v. Oliver*, 397 F.3d 369, 374 (6th Cir. 2005).

After conducting an evidentiary hearing, the district court found that Satterlee, his mother, and Cipriani were all more credible than Dodge.  *Satterlee I*, 374 F. Supp. 2d at 568-69.  Thus, the court concluded that Dodge did not inform Satterlee of the morning offer.  *Id.* at 568.  The state contends that this factual finding was clearly erroneous, arguing that Satterlee was not credible because three statements he made at the evidentiary hearing were inconsistent with either his prior pleadings or other parts of his testimony at the hearing.

The state first claims that Satterlee changed his story about where he was when Dodge allegedly mailed the letter offer.  According to the state, Satterlee claimed before the state courts and in his federal habeas petition that he was in Nevada, but at the evidentiary hearing he admitted he was in Michigan.  The first half of the state's contention is true, as Satterlee did in fact claim in his filings that he was in Nevada.  J.A. at 26 (Br. in Supp. of Pet. for Habeas Corpus at 4), 78 (Satterlee Aff. ¶ 6), 104 (Br. in Supp. of Mot. for Relief from J. at 2), 154 (Br. in Supp. of Application for Leave to Appeal at 4).  Satterlee did *not*, however, contradict this position at the evidentiary hearing.  Satterlee was never asked for his whereabouts at the time the letter offer was allegedly mailed, so he never even had the *opportunity* to contradict himself.**3**

The state next contends that at the hearing Satterlee denied ever being notified of a seven-to-twenty-year plea offer, even though elsewhere in his testimony he admitted to receiving a letter

---

**2**Moreover, the IAC claim would be exhausted even if the state were right on the facts (i.e., if Satterlee had not informed the state courts of the morning offer).  The Supreme Court has explained that "presentation of additional facts to the district court, pursuant to that court's directions, [does not] evade[] the exhaustion requirement when the prisoner has presented the substance of his claim to the state courts," so long as "the supplemental evidence presented by [the prisoner] d[oes] not fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 257-58, 260 (1986).  The purportedly new evidence of the morning offer does not "fundamentally alter" the claim that Dodge failed to relay a favorable plea offer that Satterlee would have accepted, as it would fit comfortably within the rule that "[u]nder *Vasquez* and allied decisions, the petitioner may supplement and clarify the record, *inter alia*, through . . . introduction of new factual materials supportive of those already in the record [or] presentation of additional instances of the same alleged violation."  2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 23.3c, at 1088-89 (5th ed. 2005) (footnotes omitted).

**3**Instead, Satterlee was simply asked whether the address on the letter was correct, and he testified that it was not.  J.A. at 367, 374-75 (Evid. Hr'g Tr. at 98, 105-06).

containing such an offer.[4]  This time the second half of the state's assertion is correct, as Satterlee did in fact acknowledge receiving a letter containing a seven-to-twenty-year plea offer.  *See* J.A. at 375 (Evid. Hr'g Tr. at 106) (referring to letter dated Sept. 16); J.A. at 73-74 (Letter of Sept. 16, 1998) (relaying the offer); *see also* J.A. at 77 (Satterlee Aff. ¶ 4) (acknowledging awareness of the offer).  As for the first part of its assertion (i.e., that Satterlee ever denied being informed of the offer), the state offers no citation to the record in support, but it presumably relies on the following exchange during the direct examination of Satterlee:

> Q.  At that time, at the time that you were sentenced, were you still unaware of any offer of six to 20 or seven to 20?
> A.  No, I was not.
> Q.  Were you aware or unaware?
> A.  I was not aware of any offer.

J.A. at 373-74 (Evid. Hr'g Tr. at 104-05).  On its face, this testimony would seem to support the state's assertion that Satterlee denied being aware of the seven-to-twenty-year offer and therefore contradicted himself.  However, this exchange followed soon after a discussion of the morning offer of six to twenty years.  *See* J.A. at 370-71 (Evid. Hr'g Tr. at 101-02).  Up to that point in the testimony, the topic of the seven-to-twenty-year offer had not been raised.  Given this context, it is likely that Satterlee understood the question's reference to the seven-to-twenty-year offer to be an inadvertent slip, with the question actually directed at the six-to-twenty-year (morning) offer that had just been discussed.  Thus, it is difficult to conclude that Satterlee was inconsistent on this point.

Finally, the state claims that Satterlee's testimony that he would have accepted the morning offer of six to twenty years is inconsistent with statements in various pleadings that he did not want a sentence with a twenty-year maximum.  This time, the state gets both halves of its assertion right, as Satterlee both testified that he would have accepted the morning offer, J.A. at 371 (Evid. Hr'g Tr. at 102), and said in his filings that he did not want a sentence with a twenty-year maximum, J.A. at 27 (Br. in Supp. of Pet. for Habeas Corpus at 5), 77 (Satterlee Aff. ¶ 4), 103 (Br. in Supp. of Mot. for Relief from J. at 1), 155 (Br. in Supp. of Application for Leave to Appeal at 5 n.1).  However, these two positions are not necessarily inconsistent, for at least two reasons.  First, one may very well decide to accept a plea offer if its minimum sentence is low enough, even if its maximum sentence is otherwise unappealing.  In other words, Satterlee could have found the morning offer's six-to-twenty-year term palatable because of its six-year minimum, even if he did not like the twenty-year maximum.  Second, and more fundamentally, Satterlee testified that he "thought that . . . *the whole idea* behind cooperating and doing everything they asked, giving statements, making trips to Lansing, *was to get the very best deal*; that *it was not to go to trial*."  J.A. at 371 (Evid. Hr'g Tr. at 102) (emphases added).  Maintaining the negotiating position of being unwilling to accept a twenty-year maximum is consistent with the objective of obtaining the best possible deal, while accepting an offer of six to twenty years made immediately before trial is consistent with the objective of avoiding trial.  *Cf. Griffin*, 330 F.3d at 738 ("[The defendant's] repeated declarations of innocence do not prove, as the government claims, that he would not have accepted a guilty plea.").  Satterlee was not incredible simply because he had these two objectives, which are probably held by most criminal defendants.

The above analysis demonstrates that Satterlee never really contradicted himself.  In any event, to the extent that certain statements were arguably inconsistent, we are not "'left with the definite and firm conviction that a mistake has been committed,'" *Norris*, 146 F.3d at 323 (quoting *Anderson*, 470 U.S. at 573), especially because the factual findings hinged on credibility determinations.  Therefore, we conclude that the district court's findings of fact were not clearly

---

[4]The letter discussed in this paragraph is different from the "letter offer."

erroneous.  The state does not dispute that, given these facts, the state courts' denial of Satterlee's IAC claim "was contrary to, or involved an unreasonable application of, clearly established Federal law," i.e., *Strickland* and *Hill.  See* 28 U.S.C. § 2254(d)(1).  Accordingly, we affirm the grant of the conditional writ.

## IV.  The Unconditional Writ (No. 05-2513)

### A.  Unconditional Release

The district court issued a conditional writ, allowing Satterlee to apply for immediate release unless the state made within sixty days a plea offer of six to twenty years. *Satterlee I*, 374 F. Supp. 2d at 569-70.  Because the state made no such offer in the allotted time, the district court granted an unconditional writ ordering Satterlee's immediate release. *Satterlee II*, 2005 WL 2704877, at *3. The state contends that the district court did not have the power to order this remedy.

What the state appears to have forgotten is that *it did not comply with the conditional writ*. As a sister circuit has explained, "[c]onditional [writs] are essentially accommodations accorded to the state.  They represent a [habeas] court's holding that a[n] . . . infirmity justifies petitioner's release.  The conditional nature of the order provides the state with a window of time within which it might cure the . . . error." *Phifer v. Warden*, 53 F.3d 859, 864-65 (7th Cir. 1995).  When the state fails to cure the error, i.e., when it fails to comply with the order's conditions, "[a] conditional grant of a writ of habeas corpus *requires* the petitioner's release from custody." *Fisher v. Rose*, 757 F.2d 789, 791 (6th Cir. 1985) (emphasis added); *accord, e.g.*, *Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give States time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release."); *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998); *Phifer*, 53 F.3d at 864-65; 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 33.3, at 1684 (5th ed. 2005) ("If the state fails to act within the time set for retrial (or for some other proceeding) to occur, the petitioner must be released from custody immediately.").[5]

The state offers no authority contrary to those cited above; instead, it offers an argument that we reject for the reasons stated in the margin.[6]  Thus, we conclude that the district court acted well within its power by ordering Satterlee's immediate release.

---

[5]In accordance with these principles, this court has consistently endorsed the use of conditional writs, whether by affirming district courts that grant them, *e.g.*, *Madrigal v. Bagley*, 413 F.3d 548, 553 (6th Cir. 2005); *Jamison v. Collins*, 291 F.3d 380, 392 (6th Cir. 2002), instructing district courts to grant them, *e.g.*, *Hodge v. Hurley*, 426 F.3d 368, 389 (6th Cir. 2005); *Miller v. Webb*, 385 F.3d 666, 678 (6th Cir. 2004), or granting them itself, *e.g.*, *Clinkscale v. Carter*, 375 F.3d 430, 446 (6th Cir. 2004), *cert. denied*, 543 U.S. 1177 (2005).  Such decisions would be meaningless if a habeas court could not order a noncompliant state to release a prisoner.

[6]From what we can determine, this is the state's argument:  (1) if the state had made (and Satterlee had accepted) the offer mandated by the conditional writ, then Satterlee would now be in prison, subject to release only via parole; (2) thus, the subsequent grant of immediate release was a "usurpation of the authority of the Michigan Parole Board."  Appellant Br. (05-2513) at 8.  The state is basically asking us to ignore the well-settled precedent and practice (cited above) establishing that the consequence of a state's failure to comply with a conditional writ is release of the prisoner.  We decline to do so.

The state's argument also fails as a matter of common sense.  Put in general terms, the state contends the following:  (1) The law says you must do A, or else sanction B will be imposed; (2) even if it is undisputed that you failed to do A, you can avoid sanction B *simply by pointing out that if you had done A after all, then sanction B would not have been imposed*.  We think it apparent that this argument is illogical and merits no further discussion.

## B. Expungement

Finally, the state objects to the portion of the unconditional writ ordering the expungement of the record of Satterlee's conviction. *Satterlee II*, 2005 WL 2704877, at *3. The state argues that this remedy was improper because a district court's only power when granting a writ of habeas corpus is to order the release of the prisoner.

It appears that we have never expressly addressed whether habeas courts have the power to order the expungement of the record of a conviction. We conclude that they do. The habeas statute provides that "[t]he court shall . . . dispose of the matter *as law and justice require*." 28 U.S.C. § 2243 (emphasis added). Based on this broad language, the Supreme Court has explained that the remedial power possessed by habeas courts is not limited to ordering a prisoner's discharge from physical custody. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973); *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968); *Peyton v. Rowe*, 391 U.S. 54, 66-67 (1968). Accordingly, other circuits have already recognized the power to order expungement. *A.M. v. Butler*, 360 F.3d 787, 802 (7th Cir. 2004); *United States v. Sumner*, 226 F.3d 1005, 1012 (9th Cir. 2000); *United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993); *White v. White*, 925 F.2d 287, 292 (9th Cir. 1991); *Mizell v. Att'y Gen.*, 586 F.2d 942, 948 (2d Cir. 1978), *cert. denied*, 440 U.S. 967 (1979); *Woodall v. Pettibone*, 465 F.2d 49, 53 (4th Cir. 1972), *cert. denied*, 413 U.S. 922 (1973); 2 HERTZ & LIEBMAN, *supra*, § 33.4, at 1688, 1698-99 ("[P]otentially appropriate remedies include . . . [o]rders requiring . . . expungement of criminal records . . . ."). Once again, the state cites no authority limiting the power of a habeas court in the manner that it suggests. Therefore, we affirm the unconditional writ's order of expungement.

## C. Reprosecution

Although we affirm the district court's decision to order both Satterlee's immediate release and the expungement of his record of conviction, the unconditional writ leaves ambiguous an important issue: whether the state may reprosecute Satterlee. In a typical case in which a prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ, "the state is not precluded from rearresting petitioner and retrying him under the same indictment." *Fisher*, 757 F.2d at 791; *accord, e.g.*, *Foster v. Lockhart*, 9 F.3d 722, 727-28 (8th Cir. 1993); *Moore v. Zant*, 972 F.2d 318, 320 (11th Cir. 1992), *cert. denied*, 507 U.S. 1007 (1993); 2 HERTZ & LIEBMAN, *supra*, § 33.3, at 1686 ("[F]ederal courts usually permit rearrest and retrial after the time period specified in the conditional release order has elapsed and the prisoner has been released."). However, in "extraordinary circumstances," such as when "the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial," a habeas court may "forbid[] reprosecution." 2 HERTZ & LIEBMAN, *supra*, § 33.3, at 1685-86 (footnotes omitted). It is not clear whether the unconditional writ granted by the district court is unconditional (1) in the sense that it is effective immediately but reprosecution is permitted or (2) in the sense that it bars reprosecution. Thus, we instruct the district court to clarify on remand which of these meanings it intended and, if it meant to forbid reprosecution, to justify its conclusion.[7]

---

[7]If the district court permits reprosecution, it should also consider whether "law and justice require," 28 U.S.C. § 2243, the writ to include a provision mandating the state to reinstate the six-to-twenty-year offer if it ever chooses to reprosecute Satterlee. The ineffective assistance of counsel is "subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation." *United States v. Morrison*, 449 U.S. 361, 364 (1981). "The only way to effectively repair the constitutional deprivation [the petitioner] suffered is to restore him to the position in which he would have been had the deprivation not occurred." *Lewandowski v. Makel*, 949 F.2d 884, 889 (6th Cir. 1991). Where, as here, a defendant receives a greater sentence than one contained in a plea offer that he would have accepted if not for the ineffective assistance of counsel, the properly tailored remedy is to give the defendant the opportunity to accept the offer, because simply retrying the petitioner without making the plea offer would not remedy the constitutional violation that led to the issuance of the writ. *Turner v. Tennessee*, 858 F.2d 1201, 1208 (6th Cir. 1988)

## V.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the grant of the conditional writ in No. 05-2013, **AFFIRM** the grant of the unconditional writ in No. 05-2513 with instructions to clarify, and **REMAND** for further proceedings consistent with this opinion.

---

("[T]he only way to neutralize the constitutional deprivation suffered . . . would seem to be to provide [the petitioner] with an opportunity to consider the State's two-year plea offer with the effective assistance of counsel."), *vacated on other grounds*, 492 U.S. 902 (1989); *Nunes v. Mueller*, 350 F.3d 1045, 1057-58 (9th Cir. 2003), *cert. denied*, 543 U.S. 1038 (2004); *United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir. 1994); *United States v. Rodriguez Rodriguez*, 929 F.2d 747, 753 n.1 (1st Cir. 1991); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 (3d Cir. 1982); *see also Lewandowski*, 949 F.2d at 887, 889 (ordering release when the defendant had already served a longer sentence than would have been possible under a favorable plea offer); *Boria v. Keane*, 99 F.3d 492, 499 (2d Cir. 1996) (same), *cert. denied*, 521 U.S. 1118 (1997).