**Andy NGUYEN, Petitioner–Appellant,**

v.

**Raymond BOOKER, Warden,
Respondent–Appellee.**

No. 11–1478.

United States Court of Appeals,
Sixth Circuit.

Aug. 21, 2012.

BEFORE: MOORE and COLE, Circuit Judges; ROSE, District Judge.*

OPINION

COLE, Circuit Judge.

Andy Nguyen was convicted in Michigan state court of assault with intent to commit murder and possession of a firearm during the commission of a felony, stemming from a dispute with his then-wife at her place of employment. Nguyen, as well as many of the witnesses against him at trial, are not native English speakers, but the trial court did not consistently provide a translator for either Nguyen or the witnesses. Nguyen argued to the Michigan Court of Appeals and in his petition for a writ of habeas corpus that the lack of a translator denied him his constitutional right to a fair trial. Both courts rejected Nguyen's claim. We AFFIRM the district court's denial of the petition for a writ of habeas corpus.

---

* The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Prior to October 2005, Nguyen was married to, and living with, Nhung Le. After a dispute between the couple, Le moved out and began working for Golden Nail Salon, owned by Dung Hong and his wife Ha Thi To. *People v. Nguyen*, No. 274031, 2008 WL 681131, at *1 (Mich.Ct.App. Mar. 13, 2008). Apparently, Nguyen did not approve of his wife working at the salon, and on January 7, 2006, Nguyen came to the salon, and, according to To, told her that "she had two weeks to fire Le, or else there would be consequences." *Id.* Nguyen denies making this threat, and says that he went to the salon in order to offer Le money in exchange for leaving the state. *Id.*

On February 25, 2006, Nguyen purchased a firearm. *Id.* Three days later, after properly registering the weapon, he took the weapon with him to the Golden Nail Salon. *Id.* At the salon, Nguyen asked To of Hong's whereabouts, and To informed Nguyen that he was in a back room. *Id.* At this point, there is conflicting testimony regarding the sequence of events. Hong testified that Nguyen entered the back room, pointed a gun at him, and said "Today I will kill you." Hong testified that Nguyen pulled the trigger, but the gun did not fire. At this point, Hong engaged in a physical altercation with Nguyen, and as they fought, the gun discharged and grazed Hong in the head. Hong testified he was able to wrest the gun from Nguyen, who fled out the back of the shop. Hong retained the weapon until the police arrived.

In Nguyen's telling, he went to speak to Hong in order to ask permission to talk to Le. Le was in the back room, and Nguyen had a conversation with her. During the conversation, within earshot of Hong, Nguyen said of Hong "He just using you because you have no relative here." According to Nguyen, Hong then hit him in the back of the head with a blunt object, and a scuffle broke out between the two. As Nguyen attempted to crawl away from the fight, he pulled out the gun and attempted to ward off Hong. Hong then attempted to grab the gun from Nguyen's hand, and after a lengthy melee, succeeded and wresting control of the weapon. Hong fired at least two shots in the direction of Nguyen, but Nguyen was able to successfully deflect Hong's aim away from his head. Nguyen then fled out the back door, where he heard additional shots. Nguyen denied ever firing a shot.

Nguyen was charged with assault with intent to murder, pursuant to Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, pursuant to Mich. Comp. Laws § 750.227b. At trial, both Hong and Nguyen recounted their versions of the events at Golden Nail Salon. In addition, Le, To, and other salon employees testified, though none of the witnesses could say who fired the gun. *Nguyen*, 2008 WL 681131, at *2. As all of the key witnesses were native Vietnamese speakers, issues regarding the ability of witnesses to understand and communicate in English occurred frequently throughout the course of the trial. The trial judge was uniform in his requirement that witnesses give testimony in English if at all possible. For instance, Hong made a request at the beginning of his testimony to speak exclusively through an interpreter. The Court responded "[f]or certain things, you can answer in English and it doesn't matter, but for things that you need—you believe you can express better in Vietnamese, please feel free to use that." [1]

---

1. It is not clear from the transcript when a translator was utilized during the proceedings. It is clear, however, that a translator was used for at least part of Hong's testimo-

Nguyen was convicted by the jury on both counts, and was sentenced to 12 and a half to 25 years in prison. Nguyen appealed his conviction and sentence to the Michigan Court of Appeals, arguing, inter alia, that he was denied his due process right to a fair trial by the intermittent use of translators during the trial. The Michigan Court of Appeals held that, while "each of the Vietnamese witnesses does appear to struggle with the English language at times. . . . [a]t no point were the witnesses unintelligible or incomprehensible." *Nguyen,* 2008 WL 681131, at *2. As such, the court held that the trial judge did not abuse his discretion in failing to require an interpreter at all times. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. Nguyen,* 482 Mich. 896, 753 N.W.2d 178 (2008). On February 18, 2009, Nguyen filed a petition for a writ of habeas corpus as to, among other claims, the translation issue. The district court held that the decision of the Michigan Court of Appeals was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Nguyen v. Ludwick,* No. 5:09–CV–10607, 2011 WL 902021, at *6 (E.D.Mich. Mar. 15, 2011) (quoting *Harrington v. Richter,* —— U.S. ——, 131 S.Ct. 770, 786–87, 178 L.Ed.2d 624 (2011)). We granted a certificate of appealability as to the translation issue only.

## II. BACKGROUND

"In a habeas proceeding, we review de novo the district court's legal conclusions, including its ultimate decision to grant or deny the writ, and we review for clear error its factual findings." *Foster v. Wolfenbarger,* 687 F.3d 702, 706 (6th Cir.2012) (quoting *Satterlee v. Wolfenbarger,* 453 F.3d 362, 365 (6th Cir.2006)) (internal quotation marks omitted). "A factual finding

by the district court is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

As Nguyen's conviction became final after April 24, 1996, his petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA requires that a federal court may grant a writ of habeas corpus only where the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Murphy v. Ohio,* 551 F.3d 485, 493 (6th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)) (internal quotation marks omitted). As the Supreme Court has recently emphasized, only decisions of the Supreme Court may be the basis for "clearly established law," and thus the basis for habeas relief. *Parker v. Matthews,* —— U.S. ——, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012). "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Murphy,* 551 F.3d at 493–94 (quoting *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)) (alterations in original) (internal quotation marks omitted).

### A. Procedural Default

As a threshold matter, the Warden argues that Nguyen's claim is procedurally defaulted, and thus we may not consider it

ny. (*See* Trial Tr., Vol II, at 46:2–6, R.9–10, Page ID# 648).

on the merits. "For a federal court to reach the merits of a petitioner's claims, the petitioner must show he 'exhausted the remedies available in the courts of the State.'" *Rayner v. Mills,* 685 F.3d 631, 643 (6th Cir.2012) (quoting 28 U.S.C. § 2254(b)(1)(A)). Here, the Warden argues that Nguyen's trial counsel failed to object to the lack of an interpreter at trial, and that the lack of such an objection waives the argument in later proceedings. The contemporaneous objection rule is commonly applied by Michigan courts to limit consideration of claims on appeal. *Taylor v. McKee,* 649 F.3d 446, 450–51 (6th Cir.2011). The Michigan Court of Appeals did in fact rely on this rule in reviewing Nguyen's claims. *Nguyen,* 2008 WL 681131, at *2. The fact that the Michigan Court of Appeals considered whether Nguyen could meet the highly restrictive plain error standard does not constitute a waiver of procedural default. *See White v. Mitchell,* 431 F.3d 517, 525 (6th Cir.2005) ("Although the Ohio Supreme Court did review the claims to ensure that there was no plain error, we have held that the plain error review by the state court does not constitute a waiver of procedural default rules.")

While Nguyen concedes that he did not make an explicit objection to the lack of a translator, he argues that his trial counsel, as well as the prosecutor, raised the translation issue with the trial court at various points in the proceedings, as well as pointed the court to specific instances of confusion by witnesses stemming from language barriers. For example, during the direct testimony of Le, the prosecutor asked her "Were you living with him at the time?" As the court reporter recounted it, Le responded "I left him before this happened." However, defense counsel heard "I lived with him before this happened," and the prosecutor stated "Judge, I think it's important that we understand the answers. That's why we have a translator here." The trial court instructed the lawyers to listen more "tentatively" (presumably, "intently"), as he was able to make out the answers to the questions. In other words, arguably the prosecutor and defense counsel jointly requested a translator for Le, which was denied by the trial court.

The district court construed this and similar incidents during the trial as sufficient to put the trial court on notice of potential problems with the lack of a translator. *Nguyen,* 2011 WL 902021, at *5. "[T]he general principle [is] that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review here." *Osborne v. Ohio,* 495 U.S. 103, 125, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). While there is no mention in the record that trial counsel specifically referenced a federal dimension to the translation issue,[2] the trial court was clearly aware of counsels' views on the need for translator services. Furthermore, the district court, recognizing that this is a close question, noted that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Nguyen,* 2011 WL 902021, at *5 (quoting *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir.2003)). In that light, the district court found it prudent to assume that the issue was not procedurally-defaulted and consider it on the merits. As we agree with the district court's approach,

---

**2.** Likely because, as discussed below, there is no federal constitutional right to translator services.

we next consider Nguyen's claim on the merits.[3]

## B. The Lack of a Translator at Nguyen's Trial

■ Nguyen asserts that he has a federal due process right to have the testimony of the witnesses at his trial contemporaneously translated. Translator services are provided as a matter of course in federal criminal proceedings, pursuant to the Court Interpreters Act. *See* 28 U.S.C. § 1827(d)(1) (providing for an interpreter where the judge determines that a party "speaks only or primarily a language other than the English language ... so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer...."). However, it does not follow that this creates a constitutional right to an interpreter in state court proceedings. Indeed, other courts to have considered scenarios similar to Nguyen's have all noted that the Supreme Court has not spoken to this issue. *See Celebisoy v. Brunson*, No. C08–5739–FDB, 2009 WL 2473479, at *7 (W.D.Wash. Aug. 10, 2009) ("[T]he United States Supreme Court has never explicitly recognized a constitutional right to a court-appointed interpreter."); *Nguyen v. Tilton*, No. 06–01414–JSW, 2009 WL 839278, at *19 (N.D.Cal. Mar. 30, 2009) ("Petitioner argues that due process requires the appointment of an interpreter in criminal proceedings where it is necessary.... However, there is no clearly established federal law extending any such right to witnesses."); *see also United States v. Johnson*, 248 F.3d 655, 663 (7th Cir.2001) ("The United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional

one.") Absent such controlling authority from the Supreme Court, we may not find that the Michigan Court of Appeals decision regarding the lack of an interpreter is "contrary to" clearly established federal law, and thus we may not grant habeas relief.

■ Nguyen also argues that the lack of an interpreter denied him his Confrontation Clause rights. The right to confront witnesses arrayed against a criminal defendant has undoubtedly been fully established by the Supreme Court. *E.g. Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the Supreme Court has emphasized that a defendant has the right to "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (emphasis in original). Here, Nguyen's counsel was able, albeit with difficulty, to challenge the contentions made by the key prosecution witnesses. Thus it cannot be said that Nguyen was completely denied the opportunity to cross-examine the witnesses against him.

## III. CONCLUSION

We AFFIRM the district court's denial of the petition for a writ of habeas corpus.

---

**3.** Nguyen appears to assert in his appellate brief that he was entitled to the services of a translator to understand the proceedings, separate from the lack of translator services provided to the witnesses. There is nothing in the record to suggest that Nguyen raised this issue at trial, and so to the extent he frames this as a conceptually distinct claim, it would be procedurally defaulted.